## HANNAH GEE *v.* G. W. THOMPSON.

The decree of separation from bed and board does not dissolve the bonds of matrimony. C. C. Art. 133; C. C. Art. 152.

The surviving wife is not precluded from claiming the marital portion, under Art. 2359 C. C., by the fact of having obtained a judgment of separation from bed and board, and of having lived separate from her deceased spouse up to the time of his death, for though separated in bed and board, she is still the wife, and incapable of contracting a second marriage.

When the husband died worth $31,000, and the surviving wife was fifty-five years of age, and all the means she had was $1,180, *Held:* that the husband died rich, and the surviving wife was in necessitous circumstances within the meaning of Art. 2359 of the Code.

The Art. 918 C. C., which provides the heir to the entire succession, does not repeal nor introduce an exception into Art. 2359, which provides for the sole case where one of the spouses dies rich, leaving the other in necessitous circumstances.

The husband or wife, separated in bed and board, is not entitled to the marital portion. LEA, J., dissenting.

APPEAL from the District Court of the parish of Bossier, *Drew*, J.

*Landrum & Ray*, for plaintiff. *Looney*, for defendant and appellant.

MERRICK, C. J. (LEA, J., dissenting.) This suit is for the marital fourth. By consent of parties at Monroe, the case was reserved to be decided at New Orleans. The judgment in favor of the plaintiff, decreeing her a separation of bed and board against *Benjamin L. Saunders*, deceased, establishes by that verity which belongs to judgments, that said *Saunders* forcibly expelled and drove the plaintiff away from their common dwelling, without any just cause or provocation whatever; that she remained separated from him by reason of his unlawful acts, notwithstanding her desire to return; that he defamed the plaintiff, and that his conduct was cruel, excessive, and of such a nature and character as to render the living with her said husband absolutely unsupportable.

The wife was, therefore, driven by the conduct of *Saunders* to place herself under the protection of the law, and we cannot believe that she has placed herself in a worse condition by so doing. The law would be a strange one which should hold out rewards to violence and injustice even by its consequences.

By Article 2359 C. C. it is provided, that when the wife has not brought any dowry, or when what she has brought as dowry is inconsiderable with respect to the condition of the husband, if either the husband or the wife die rich, leaving the survivor in necessitous circumstances, the latter has the right to take out of the succession of the deceased what is called the marital portion, that is, the fourth of the succession in full property, if there be no children, and the same in usufruct only where there are but three or a smaller number of children; and if there be more than three children, the surviving, whether hus-

83

band or wife, shall receive only a child's share in the usufruct, and he is bound to include in this portion what has been left to him as a legacy by the husband or wife who died first.

This Article remains unrepealed, and being unaware of any law making exceptions to it, we think we are prohibited from distinguishing where the law does not distinguish.

Two questions, therefore, arise under this Article:

1st. Was the plaintiff the *wife* of *Saunders* at the time of his death ?

2d. Did he die rich, leaving her in necessitous circumstances ?

I. Article 133 of the Civil Code answers the first of these questions in the affirmative. It declares in the last sentence of the Article that "separation from bed and board does not dissolve the bond of matrimony since *the separated husband and wife* are not at liberty to marry again, but it puts an end to their conjugal cohabitation and the common concerns (intérêts) which existed between them. The parties are left in this condition for two years, in the hope that a reconciliation will take place between them. The law lends itself with such facility to the furtherance of this idea, that the reconciliation without any form of law annuls the separation from bed and board." Troplong du Mariage, No. 1465.

The law, therefore, while it prevents the wife from marrying again, and forming any other establishment, ought not to deprive her of all rights upon the estate of her husband, if he should die in the interval in which she is obliged to consider herself his wife.

The civil and common law writers agree that the decree of separation of bed and board does not dissolve the bonds of matrimony.

Zachariæ says: "La séparation de corps ne rompt pas, mais rélâche seulement le lien du mariage. En général, elle laisse subsister *tous les effets juridiques* que le mariage produit et n'entraine que l'extinction de ceux de ces effets qui sont une conséquence de la vie commune." Seconde Partie, § 489. See also Troplong du Mariage, 2 vo., Nos. 1268 and 1464; 5 Pothier, 523.

At common law it is said: "A divorce *a mensa et thoro* dissolveth not the marriage, for the cause of it is subsequent to the marriage, and supposes the marriage to be lawful. And as it doth not dissolve the marriage, *so it doth not debar the woman of her dower*, or bastardize the issue or make void any estate for the life of the husband and wife." Co. Lit. 235; Tomlin Law Dict., *verbo* Divorce.

Our own law looks with favor upon a person occupying the position of the plaintiff in this case, for it expressly declares: "In case of a separation from bed and board, the party against whom it shall have been pronounced shall lose all the advantages or donations the other party may have conferred by the marriage contract, or since, and the party at whose instance the separation may have been obtained shall preserve all those to which such party would have been entitled, and these dispositions are to take place even in case the advantages and donations were reciprocally made." C. C. 152.

The marital fourth, it appears by the fifty-third novel of Justinian, originated in cases of divorce. No decree from the magistrate was required under that law. To protect the divorced wife (in those cases in which she had no dower) from want, was the origin of the marital fourth. The fifty-third novel extended the relief to the wife in the case of the death of her husband, and afterwards, by chapter five of the one hundred and seventeenth novel, the same

right was given to the necessitous husband in the estate of his deceased wife, if she died rich.

If we, therefore, consider the origin of the marital fourth, it was designed at first to apply to such a case as we have before us.

But it is said that Article 918 C. C. proves that it was not the intention of the lawgiver that the wife, separated in bed and board, should inherit, to the exclusion of any natural child or children duly acknowledged, much less any legitimate children of the deceased.

An answer to the foregoing argument is this: The marital fourth is provided for under the head of marriage contract, and depends upon contingencies, and is exceptional in its character. The surviving husband or wife is to have the marital fourth only when the pre-deceased spouse died rich, leaving the survivor in necessitous circumstances. If both of these things do not happen, the survivor takes nothing. Moreover, it has been held by this court that, whether the pre-deceased husband or wife died rich or not, could only be determined after the settlement of his estate in the Probate Court. 17 L. R. 376. Hence the right to the marital fourth not only depends upon the contingencies named, but also, in order to ascertain the existence of the conditions, time is required for the settlement of the estate in the Probate Court.

Now, on the contrary, in regard to successions, it interests the public order that the instant a person dies it should be known what persons should succeed to his effects. Hence those provisions of law were established under the head Successions, declaring who shall inherit, and casting the inheritance upon the heir so designated, even unknown to himself. The person upon whom the inheritance is by law conferred, and who is called the heir, is so different from the surviving husband and wife claiming the marital fourth, that such demand, like a demand for a legacy, must be made upon the heir.

The heir, on the contrary, is not obliged to apply to a court of justice in order to be invested with the effects of a succession. He has the right at once to take possession as proprietor. Article 918 of the Civil Code is found under the title Successions, and it provides for the entire effects of the intestate, and designates who shall receive them as heir where the deceased husband left no ascendants, lawful descendants or collateral relations, and did leave a surviving wife not separated from bed and board from him. It declares that such wife shall inherit from him, to the exclusion of any natural child or children duly acknowledged. The law makes her the heir of her husband, whether she be rich or poor.

It is thus apparent, that even as they are embraced under different titles in the Code, so were Articles 918 and 2359 intended to apply to different classes of cases.

The one to provide an heir to an entire succession, the other to relieve the surviving husband or wife when in want.

Now are these two Articles so repugnant to each other that the one repeals the other ? If so, which is repealed, the first or the last? For it is the duty of the court, where it is possible, to give effect to every Article of the Code, and it is incumbent on those who hold an Article void for repugnancy to some other to make the repugnancy appear by the clearest logic, and then also to show that the law, so alleged to be abrogated, is older in date than the repealing statute.

But when we look to the object of the Legislature, we see no repugnancy in the two Articles, and if it should please us to say, that the marital fourth is taken by inheritance, we may read the two Articles together in this way. If a married man has left no lawful ascendants or decendants, nor any collateral relations, but a surviving wife not separated from bed and board, the wife shall inherit from him his whole estate, to the exclusion of any natural children which he may have left, but if she be separated from her husband from bed and board, and if her husband die rich, and leave her in necessitous circumstances, then, instead of inheriting the whole estate, as she would have done if not so separated, she shall have only one-fourth thereof.

Any other conclusion seems to be based upon this fallacy. Article 918 of the Civil Code does not give to the surviving wife the *whole* of the husband's estate, where she is separated from him *a mensa et thoro*, therefore it is not possible that any other Article of the Code can be intended to give the wife, under any circumstances, one-fourth or a less portion of his estate.

And that this is not an unfair statement of the argument must be manifest from the reflection that if the wife, separated *a mensa et thoro*, can demand the marital fourth, as against the natural children duly acknowledged, she can, by force of the Article, also demand it against every other relation.

We therefore conclude, that Article 918, which provides the heir to the entire succession, does not repeal nor introduce an exception into Article 2359, which provides for the sole case where the one of the spouses dies rich, leaving the other in necessitous circumstances.

II. In regard to the question whether *Saunders* died rich, leaving the plaintiff in necessitous circumstances, we think a comparison of the estate left by *Saunders*, with the means of support of the widow, will show that this question must also be answered in the affirmative. It is conceded that *Saunders'* estate, after all debts are paid, is over $31,000. He, therefore, died comparatively rich.

The witnesses say the plaintiff is poor. But it shown that she had, in cash, in October, 1850, $825 65, and in November of the same year she lent to *Jackson Burnham* $1,130, at eight per cent interest; that he paid her $800 in February, 1852, fifty dollars being in money, and that about the same time she lent *Cason* $100. *Burnham* also swears that *S. P. Gee* told him that, between 1843 and 1846, he paid plaintiff some $1,600. Now, if this hearsay testimony were to be considered and believed, it would only show that in 1846, seven years before this suit was instituted, the plaintiff had received, either for herself or some one else, $1,600. If *S. P. Gee* told *Burnham* the truth, of which we have no evidence, then it is probable that the $825 65, which *Thompson* testified to, was a part of it, and that the $825 65, seen by *Thompsan* in October, was increased to $1,130 by November, when it was all loaned to *Burnham*. Treating these loans as successive, as they appear to be, which is in perfect harmony with the testimony of the witnesses who say they consider the plaintiff poor, it makes her probable means about $1,180. If we add into one sum these successive loans of the plaintiff, we make, indeed, $3,600, but it seems to be fictitious rather than real.

The plaintiff is now about fifty-five years of age. She cannot be expected to labor with her hands. It is not shown that she is capable of managing any business. The interest on her $1,180 will produce her ninety-four dollars and forty cents a year, not quite eight dollars a month for boarding, clothing and necessaries. We think her estate inconsiderable with respect to the condition

of the husband, and that she is in necessitous circumstances in the contemplation of the Code.

The common law of England gives the surviving wife, whether rich or poor, dower in her husband's lands, and by statute she receives one-third of his personal estate. By the same law the husband inherits the personal effects of his wife 'as next of kin, and if there be issue of the marriage born alive, he holds all of her lands during his life as tenant by courtesy.

Our law, if less generous in this respect, affords something to the necessities of the survivor. We think it should receive a fair if not liberal construction.

We see no hardship, therefore, in decreeing to the plaintiff the usufruct of one-ninth of the property belonging to the succession of *B. L. Saunders*, deceased. The plaintiff will be obliged to give security for the property, and in the ordinary course of nature it will return in a few years to the defendants.

We think the judgment ought to be affirmed.

Judgment affirmed.

SPOFFORD, J., having been of counsel for one of the parties, takes no part in the decision of this cause.

LEA, J., dissenting. This case is presented on an appeal, taken by the defendants from a judgment condemning them to pay to the plaintiff one-ninth part of the net proceeds of the estate of *Benjamin L. Saunders*, in usufruct as a marital portion. In her petition the plaintiff alleges that she is the surviving wife of *Benjamin L. Saunders*, who died rich, leaving her, his widow, in necessitous circumstances.

. Wherefore she claims the benefit of the provisions of Article 2359 of the Civil Code, allowing her the usufruct of a share of the estate equal to a child's portion.

She further alleges, in a supplemental petition, that there existed a community interest of acquests and gains between her and her deceased husband, of which she prays the court to grant a decree for a liquidation and settlement. Upon the claim for a recognition and liquidation of the plaintiff's community rights, there was a judgment for the defendants, which we are not called upon to disturb.

As respects the demand for the usufruct, as before stated, the facts of the case, as disclosed by the evidence, appear to be substantially as follows: The plaintiff and the deceased, after living together as man and wife for about three years, were separated by a judgment of separation from bed and board, obtained by the plaintiff against her husband on the 22d May, 1852, the suit having been previously instituted in February of the same year. About the middle of October, 1852, *Saunders* died leaving a considerable estate, and the question to be determined is whether, under the circumstances, as disclosed by the evidence, the plaintiff is entitled to the benefit of the provisions of Article 2359 of the Civil Code, allowing the widow in necessitous circumstances the marital portion.

It is insisted that the wife, separated in bed and board, is yet the wife, and continues to be such until a final divorce, and that, where a judgment of separation has been rendered in her favor, (which establishes a presumption that she was not in fault,) the express provisions of our Code secure to her all the advantages or donations the other party may have conferred by the marriage contract. See Civil Code, Art 152.

The misapprehension of the true meaning and spirit of this Article of the Code arises probably in part from its being placed under a title in the Code to which it does not belong. The Article, or at least that portion of it which is applicable to the case at bar, is as follows: "Article 2359. When the wife has not brought any dowry, or when what she has brought as a dowry is inconsiderable with respect to the condition of the husband, if either the husband or the wife die rich, leaving the survivor in necessitous circumstances, the latter has a right to take out of the succession of the deceased what is called the marital portion," &c.

Now this Article is found under the title which treats of marriage contracts. It is evident that it has no proper connection with that title. It is a legislative provision, conferring and regulating a right to a portion of the estate of a deceased person, precisely as other legislative provisions confer and regulate the rights of parents, children, brothers, and other relatives of deceased persons upon their estates. It is therefore a law of inheritance, and has nothing to do with marriage contracts. In a certain event it makes the surviving spouse not only an heir but a forced heir, and, with certain qualifications, puts him or her (as the case may be) on a footing with the children or other heirs of the deceased.

Every reader of the Code is aware that many Articles are found under titles where a proper classification would never have placed them; but this fact has never been held to justify a construction at variance with their meaning and character. The surviving spouse, who acquires any rights under the Article in question, takes, therefore, by inheritance as other heirs. See 3 N. S. p. 3. See also the opinion of Chief Justice Slidell in the case of *Susan Conner* v. *the Heirs of Conner*, 10th Annual, in which the right of the wife to the marital fourth is expressly designated as one of inheritance.

This view of the case is illustrated by a reference to the laws from which our legislation on the subject is derived.

The marital portion was first allowed by the 53d and 117th novels of Justinian, but is more directly derived, as we find it in a modified form incorporated in our laws, from the legislation of Spain. The law 7th of the 6th Partidas, title 13, from which the Article 2359 of our Code is directly derived, is found in that work under its appropriate head of Inheritance, and it provides that "if the husband should not leave the wife the means of living independently, and she should not possess them herself, then she may *inherit* one-fourth of the estate," &c. This law was established, says Gregorio Lopez, "in honorum præteriti matrimonii ut conserventur coryuges in solito statu."

The humane and salutary provisions of this Article were intended to provide against the consequences of a sudden change in the condition in life of a surviving spouse incident to the death of the other, "to prevent those who have lived together, in the enjoyment of wealth and the position which it gives, from being suddenly reduced to want." 3 An. 105.

The law provides that a right which is incidental to the marriage state, (viz: that of mutual protection and support,) should be extended beyond its termination by so regulating the law of inheritance as to appropriate a portion of the estate of a deceased spouse to the support of the survivor. If this view be correct in principle, it presupposes that, at the time of the death of the deceased spouse, the marital relation between the two was undisturbed; but no such doctrine is applicable to a case where there has been a separation from

bed and board. In such case the relation of the parties, in consideration of which the marital portion is allowed, have ceased to exist before death. If the husband is not bound to support the wife, separated from bed and board, before his death, it is difficult to conceive upon what principle of equity that event could give her a claim to stand on the same though an unequal footing with the forceed heirs of his estate.

A judgment of separation from bed and board severs the personal relations of the parties, and with it the mutual obligations which are the considerations of the contract. After that event, as both parties are absolved from the duties so they are prohibited from claiming the rights incident to a relation which they have renounced.

It is proper, therefore, that the wife, separated from bed and board, should not inherit from the estate of the deceased husband, and while the law, in a spirit of humanity and wisdom, has, "in honorem præteriti matrimonii," provided for the support of her who is truly a widow, it has at the same time, in regard to any rights of inheritance, left the spouses who are separated in bed and board in the position which they occupy in the actual relations of life— that of strangers to each other.

The 918th Article of the Civil Code is as follows: "If a married man has left no lawful descendents, nor any collateral relations but a surviving wife, not separated in bed and board from him, the wife shall *inherit* from him, to the exclusion of any natural child or children duly acknowledged."

If the construction of Art. 2359 which has been contended for by plaintiff's counsel were correct, one Article of the Code would exclude the wife separated from bed and board altogether from a participation in the inheritance of her husband's estate, and another would place her on the footing of a forced heir to the partial exclusion of his blood relations. No such an anomaly in legislation was intended. The Articles are perfectly consistent with each other if construed with reference to the ordinary acceptation of language as applicable to the ordinary relations of life. Thus, when parents, children or relations are spoken of, we mean legitimate parents, children or relations, and legislation applicable to such, in general terms, is never extended by construction to bastard or illegitimate relations; so general legislation, having reference to the rights of married persons, may be supposed to refer to cases where the marital relation has been undisturbed, not where a partial divorce has been judicially decreed between the parties.

The "advantages" referred to in Article 152, as being "retained" by the party in whose favor a decree of separation shall have been granted, have reference evidently to such as have been conferred by the marriage contract, or afterwards by one of the parties, but can have no application to a legal provision regulating the order of inheritance.

In my opinion the judgment appealed from should be reversed.